[Cite as *State v. Ollison*, 2016-Ohio-8269.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 16AP-95 |
| v. | : | (M.C. No. 15CRB-3117) |
| Yesenia Ollison, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on December 20, 2016

**On brief:** *Richard C. Pfeiffer, Jr.*, City Attorney, and *Orly Ahroni*, for appellee. **Argued:** *Orly Ahroni*.

**On brief:** *Yeura R. Venters*, Public Defender, and *Timothy E. Pierce*, for appellant. **Argued:** *Timothy E. Pierce.*

APPEAL from the Franklin County Municipal Court

SADLER, J.

{¶ 1} Defendant-appellant, Yesenia Ollison, appeals from the February 8, 2016 judgment entry of the Franklin County Municipal Court sentencing her to two years of probation after the jury's finding of guilt on charges of assault and disorderly conduct. For the following reasons, we affirm the trial court judgment.

I. BACKGROUND

{¶ 2} On February 9, 2015, criminal complaints were filed alleging appellant committed one count of assault, a violation of R.C. 2903.13(A), and one count of disorderly conduct, a violation of Columbus City Code 2317.11(A)(1), arising out of a December 26, 2014 parking lot incident in which appellant purportedly struck another woman, Jermaria Clardy, with her fist. Appellant pled not guilty to the charges.

{¶ 3}   On February 1, 2016, appellant filed a motion in limine to preclude appellee from introducing a cell phone recording of a security video of the incident.  Appellant's motion asserted that the video violated Evid.R. 901, 403, and "the Completeness Doctrine."  (Mot. in Lim. to Exclude Video at 1.)  Appellant attached to the motion in limine a copy of a magistrate's decision denying Clardy's civil stalking protection order from May 2015.  Prior to commencing the trial, the trial court heard arguments from the parties regarding the motion in limine and the admissibility of the cell phone recording of the security video and overruled the motion while noting additional arguments would be entertained by the court at the time of a proffer of the recording.  The case proceeded to a jury trial.

{¶ 4}   The following facts are not in dispute.  On December 26, 2014, at around 9:20 p.m., Clardy drove her car to a market with her daughter, niece, and nephew in the backseat and her teenage brother, Markadom Banks, in the passenger seat.  Clardy parked her car, entered the market, and shopped for groceries while her brother and the children remained in the car.  As she returned from the market and attempted to reenter her car, several females dragged her from her car and attacked her in the parking lot of the market, resulting in injuries to Clardy's face and arms.  Whether appellant was one of those females who participated in the attack was the central issue in dispute at trial.

{¶ 5}   According to Clardy, appellant attacked her as part of a group retaliating for a fight that occurred the previous day between Clardy and a woman named Cynthia Aponte.  Clardy testified that she personally knows Aponte through Charles McGinnis, the father of Clardy's daughter.  She assumed Aponte and McGinnis were in a romantic relationship and testified that Aponte would call her and that the calls evolved from asking about Clardy's relationship with McGinnis to threatening Clardy and her child.  In the beginning of December 2014, Clardy pursued a protection order against Aponte but testified that the protection order was not served on Aponte because of an inaccurate address.

{¶ 6}   On Christmas day 2014, Clardy and her daughter were at Clardy's father's house.  McGinnis stopped by alone to give gifts to their daughter, at which time Clardy stepped outside to avoid trouble and have a cigarette.  According to Clardy, Aponte arrived in another car, the two women exchanged words, and Aponte exited her vehicle

and initiated a physical fight with Clardy. A police officer saw the altercation and took a report but did not make any arrests.

{¶ 7} Clardy testified that the next day, December 26, 2014, she went to her mother's house after work to pick up her daughter, niece, and nephew. She noticed a vehicle circling her mother's block but did not recognize the vehicle and thought the driver was lost. Clardy then took her brother, Banks, and the three children to McGuffey Market, which was located about 10 or 15 minutes away from her mother's house. Clardy and her brother noticed a vehicle following her car from a distance. Once at the market, Clardy went inside the store while her brother and the children stayed in the car. Clardy made her purchases and then noticed a crowd by the door to the market, in the parking lot, and by the vehicles. Clardy walked to her vehicle but before she could open her door, appellant ran up and attacked Clardy, striking her, and the two began fighting. Clardy was then dragged to the middle of the parking lot, where several more people assaulted her. Clardy testified that she was beaten, kicked, and hit in the head with an object and that she could hear her daughter's screams during the attack. Clardy's brother was eventually able to grab her and escort her to her vehicle. Clardy called the police and returned to her father's house, "hysterical" and bleeding. (Tr. Vol. I at 172.)

{¶ 8} Police arrived and Clardy told police that Aponte and some of Aponte's relatives, including "Jessie," assaulted her. (Tr. Vol. I at 173.) At that time, Clardy did not know the actual names of the attackers; rather, she recognized several faces, including appellant, whom she knew at that time by the name of Jessie Aponte, and another one of their relatives, whom she later found out was named Michella Akram. After the attack, she received phone calls from Aponte whereby Aponte laughed and told her she got what she deserved and that "it's not over." (Tr. Vol. I at 173.) When Clardy started naming Aponte and Jessie's names, they hung up the phone.

{¶ 9} The following day, December 27, 2014, Clardy and her father returned to the market and asked to see video footage of the attack. The store would not provide a copy of the surveillance footage to Clardy but allowed her to record the footage with her cell phone as the footage played on a television in the market. Clardy then went to FedEx and had the recording from her cell phone put on a disk. She presented the disk containing the recording of the market surveillance footage to the prosecutor's office the

following Monday morning. Clardy testified that she reviewed the contents of the disk, that it fairly and accurately depicts her being assaulted at the market on December 26, 2014, and confirmed that she was present on the scene at the time of the incident depicted in the video. Appellant objected to use and admission of the video into evidence in the trial, arguing that the video violated Evid.R. 901(B)(1), the Completeness Doctrine, and Evid.R. 403. The trial court overruled appellant's objection, finding the video admissible. Appellee played the video for the jury, and Clardy testified that she had no control over skips that occurred in the video footage. Clardy identified her vehicle, herself, her brother, appellant, Aponte, Akram, and McGinnis in the video. Clardy testified that appellant was the person in the video wearing jeans and a grey "hoodie" sweatshirt with short or shoulder length hair. (Tr. Vol. I at 202.) Clardy testified that at the 37-second mark of the video, Clardy was on the ground with appellant at the top of her torso and Aponte near her lower body, and at the 1 minute, 3-second mark, Clardy is "getting dragged." (Tr. Vol. I at 204.) Clardy additionally identified appellant at the 2-minute, 2-second mark walking toward Clardy as Clardy returned to her car.

{¶ 10} Clardy took the video to the prosecutor's office the following Monday morning, December 29, 2014, and made a report. At that time, Clardy knew Aponte's name and thought appellant was named Jessie Aponte. According to Clardy, she was familiar with appellant's face before the attack because Clardy had viewed pictures of appellant with Aponte on Aponte's Facebook page with appellant's nickname tagged to the picture. The prosecutor's office could not find the name Jessie Aponte in a database or through a special unit and gave Clardy 30 days to locate the accurate name in order to process the charges against her. Clardy found out appellant's real name through mutual friends and social media. She saw a picture online with appellant's real name, and she was sure the person in the picture was the same person who attacked her. In the courtroom, Clardy identified appellant as the person who attacked her, testified that "[t]here is no doubt in my mind" that appellant is the first person who attacked her, and specified appellant as the main individual who attacked her. (Tr. Vol. I at 169.)

{¶ 11} On cross-examination, Clardy testified that she has not had other problems with people following her, threatening her, or attempting to fight her. Appellee objected to the relevance of the questioning, and appellant indicated her intent to introduce

evidence that there might be other people Clardy has grudges with and written statements where Clardy accused other people of following her and threatening her in the past. Appellee responded by noting that appellant had not provided the document, a 2011 protection order, during discovery by arguing that the document constituted extrinsic evidence to attack character, and with no other ties between the previous event years earlier and the current attack, the information was prejudicial and confusing to the issue. The trial court sustained appellee's objection and disallowed further questioning.

{¶ 12} Banks testified that he witnessed appellant attack his sister, Clardy, on December 26, 2014 outside the market. He was in Clardy's car with his nieces and nephew when a crowd of people started gathering around the store. According to Banks, as Clardy was about to enter her car, appellant ran up to her swinging and hit her. Clardy then was dragged to the middle of the parking lot. Banks got out of the passenger side door of the car, but two adult men approached and told him "[i]t's a one-on-one fight," and one man patted his side in such a way that Banks believed he had a weapon. (Tr. Vol. II at 278.) Banks then saw Aponte and Akram jump on Clardy; Banks testified he knew both Aponte and Akram prior to the fight. When the men were gone, Banks tried to stop the fight and pulled on his sister to free her from appellant, who had Clardy by the hair and was punching her face. He was "face to face" with appellant, about one foot away from her, and got a "pretty good look" at appellant. (Tr. Vol. II at 282, 307.) At the time of the incident, Banks knew appellant by the name of Jessie. Banks identified appellant in the courtroom as the person who hit his sister and agreed that he was certain that appellant was the person who attacked his sister.

{¶ 13} Over appellant's renewed objection, appellee again played the video and Banks confirmed that the video is a true and accurate depiction of the attack that happened to his sister on December 26, 2014. Banks identified his sister, appellant, Aponte, Akram, and himself in the video. He described appellant as wearing a grey or white jacket and testified that appellant was the person pinning down his sister and punching her. According to Banks, after the fight was over and he was attempting to get Clardy in the car, appellant continued to try to hit her. During this time, Banks was one or two-feet away from appellant.

{¶ 14} On cross-examination, Banks testified that he did not know Aponte had a sister and agreed that he looked at Aponte's Facebook page with Clardy before going to the prosecutor's office with her.  He agreed that he never made a statement to police.

{¶ 15} Ryan Craig, an officer with the Columbus Division of Police, testified to responding to a call about an assault on December 26, 2014 and interviewing Clardy and her brother.  According to Craig, Clardy told him she knew two of her attackers, Cynthia Aponte and a person with the "street name" Jessie Aponte and did not know the names of her other attackers at that time.  (Tr. Vol. II at 339.)  She described the car the attackers left in as a white Honda CRV and gave him two license plate numbers.  The license plate numbers "were run through LEADS without a match."  (Tr. Vol. II at 311.)  Craig ran a third license plate number given by Clardy to prosecutors through LEADS and received a match with a white Honda CRV.  On cross-examination, Craig testified that to his knowledge, neither a live or photo lineup was conducted in this case.  He and other officers did not go to the market to investigate or retrieve the surveillance video.  As to his interview with Clardy, Craig testified that she "gave very vague physical descriptions of three of the five, but two she knew by name."  (Tr. Vol. II at 333.)  The license plate that garnered a LEADS match indicated that a leasing company owned the vehicle.

{¶ 16} Thomas Watkins, a detective with the Columbus Division of Police, testified to investigating the December 26, 2014 incident at the market.  Watkins spoke to appellant by phone in January 2015, and appellant told him that she knew Clardy through Facebook and that she was not involved in the incident.  At some point, Watkins reviewed a video of the incident but did not remember how he was provided the video.  As part of his investigation, Watkins did not prepare any live or photo lineups.

{¶ 17} Appellee submitted 13 photographs as exhibits, which were admitted without objection, and the DVD, which was admitted over objection.  Appellee then rested its case-in-chief.  Appellant moved for a judgment of acquittal under Crim.R. 29, which the court overruled.

{¶ 18} The defense then called two alibi witnesses, Mary Butcher and India Taylor, to testify.  According to Butcher, a childhood friend of appellant who has known her for over 25 years and sees her regularly, appellant's full name is Yesenia Jessie Aponte, and Ollison is appellant's married name.  Cynthia Aponte is appellant's niece and had lived

with appellant either in 2013 or 2014 and moved out due to having issues with her boyfriend, McGinnis. Cynthia Aponte has one sister named Jessica Aponte. Butcher testified that on December 26, 2014, she went to appellant's house for dinner and to hang out, arriving between 4:00 and 4:30 p.m. and staying until 11:00 p.m. Neither appellant nor Butcher left appellant's home at any point during that span. Also present in the home were appellant's children and appellant's boyfriend, Jawan, and Taylor, among some other people Butcher did not know.

{¶ 19} According to Taylor, who is also appellant's childhood friend, on December 26, 2014, Taylor went to appellant's house at about 5:00 p.m. to hang out with appellant and Butcher and left appellant's house at about 2:00 a.m. In addition to appellant and Butcher, appellant's boyfriend and a couple of other people were at appellant's home that evening. Taylor and appellant did not leave appellant's house the entire evening. On cross-examination, Taylor testified that since childhood, she had known appellant by the name of Jessie.

{¶ 20} Appellant then testified in her own defense. Appellant stated her legal name on her birth certificate is Yesenia Jessie Aponte, and that she goes by the name of Jessie. She kept the last name Ollison, her former husband's last name, to have the same last name as her children. Regarding her niece, Cynthia Aponte, appellant testified that she "pretty much raised her" because her sister was not around and that Cynthia had lived with her for almost one year in 2013 until her problems with her boyfriend, McGinnis, led to appellant not allowing Cynthia in her home anymore. (Tr. Vol. II at 395.) Cynthia did not live with appellant on the day of the alleged assault. Appellant testified that she lives on the east side and is familiar with McGuffey Market and that her sister, Cynthia's mom, lives near the market.

{¶ 21} According to appellant, she was at her own home on the evening of the incident hanging out with her close friends, children, and boyfriend, and she did not leave. Her friends came over around 4:00 or 5:00 p.m., and the last friend present, Taylor, did not leave until 1:00 or 2:00 a.m. She knew of Clardy through Cynthia but had never met her or talked to her.

{¶ 22} On cross-examination, appellant testified that Cynthia did not talk to her about the fight she had with Clardy on Christmas day or what happened at McGuffey

Market.  Appellant confirmed that at the time of the incident, she had a Facebook page that stated her name as Jessie Aponte and that Yesenia Ollison is her government name that "wouldn't be anywhere except for [her] ID or a bill collector."  (Tr. Vol. II at 409.) Appellant agreed that appellee's exhibits 16 and 17 were fair and accurate copies of her Facebook profile page, and those exhibits were admitted without objection.

{¶ 23} Appellant rested her case.  The jury found appellant guilty of both the assault charge and the disorderly conduct charge, and on appellee's request, the trial court proceeded directly to sentencing.  Reflecting its sentencing decision in court, in an entry dated February 8, 2016, the trial court stated:

> Defendant was found guilty by the jury of Assault and Disorderly Conduct.  Defendant was sentenced to 180 days in jail, credit for 2, 28 days forthwith, 150 days suspended. Defendant is place on probation for a period of 2 years with the following conditions: Stay away from Jermaria Clardy and Markadom Banks, no same or similar, no further acts of violence, submit to alcohol/drug screens, do not report to probation under the influence of alcohol or drugs of abuse, and assessment/counseling as deemed appropriate by probation.

{¶ 24} In a subsequent entry dated February 12, 2016, the trial court "affirm[ed] the sentence." (Feb. 12, 2016 Entry at 1.)  Appellant filed a timely appeal.

## II.  ASSIGNMENTS OF ERROR

{¶ 25} Appellant submits four assignments of error for our review:

> [1.] Appellant's rights against double jeopardy and to due process of law under the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Sections 1, 10 and 16 of the Ohio Constitution were violated when the jury returned a verdict convicting her of both assault, a violation of R.C. 2903.13(A), a misdemeanor of the first degree, as well as the lesser-included offense of disorderly conduct, a violation of Columbus City Code Section 2317.11(A)(1), a misdemeanor of the fourth degree.

> [2.] The lower court erred by admitting into evidence State's Exhibit 14 (the surveillance video recording) in violation of Evid. R. 901, 1002, 1003, and 403(A). This resulted in a violation of Appellant's right to a fair trial under the Due Process Clauses of the Fourteenth Amendment to the United

States Constitution and Article I, Sections 1 and 16 of the Ohio Constitution.

[3.] Appellant's right to a fair trial under the Due Process Clauses of the Fourteenth Amendment of the United States Constitution and Article I, Sections 1 and 16 of the Ohio Constitution were violated when prosecution witnesses Jermaria Clardy and Markadom Banks offered lay opinion testimony that Appellant was depicted in State's Exhibit 14 (the surveillance video recording) which invaded the province of the jury.

[4.] The trial court erred when it precluded appellant from impeaching prosecution witness Jermaria Clardy via Evid. R. 613 and Evid. R. 616. This denied Appellant her right to a fair trial under the Due Process Clauses of the Fourteenth Amendment of the United States Constitution and Article I, Sections 1 and 16 of the Ohio Constitution.

## III. DISCUSSION

### A. First Assignment of Error

{¶ 26} In her first assignment of error, appellant contends that her rights against double jeopardy and to due process of law were violated "when the jury convicted her of assault and disorderly conduct, the latter being a lesser-included offense of the former." (Appellant's Brief at 1.) For the following reasons, we overrule appellant's first assignment of error.

{¶ 27} We note that appellant did not ask for jury instructions or otherwise raise these issues throughout trial or at sentencing. Matters not objected to at the trial court level are reviewed under the plain error standard. Crim.R. 52(B). "In order to have plain error under Crim.R. 52(B), there must be an error, the error must be an 'obvious' defect in the trial proceedings, and the error must have affected 'substantial rights,' meaning that the error must have affected the outcome of the trial." *State v. Ryan*, 10th Dist. No. 08AP-481, 2009-Ohio-3235, ¶ 18, *discretionary appeal not allowed*, 123 Ohio St.3d 1496, 2009-Ohio-6015, quoting *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "Plain error is to be used 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Barnes* at ¶ 18, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. A violation of double jeopardy constitutes plain

error.  *State v. Dunham*, 4th Dist. No. 04CA2941, 2005-Ohio-3642, ¶ 55.  *See also State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, ¶ 31.

{¶ 28} The Double Jeopardy Clause of the United States Constitution, applied to the states through the Fourteenth Amendment, and additionally guaranteed by Article I, Section 10 of the Ohio Constitution, provides a defendant three protections: it protects against a second prosecution for the same offense after acquittal, it protects against a second prosecution for the same offense after conviction, and it protects against multiple punishments for the same offense.  *Ryan* at ¶ 19, citing *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, ¶ 10, *certiorari denied*, 129 S.Ct. 1356 (2009), citing *United States v. Halper*, 490 U.S. 435, 440 (1989); *Ohio v. Johnson*, 467 U.S. 493, 498 (1984).

{¶ 29} "[W]hen multiple punishments are imposed in the same proceeding, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."  *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 16.  Thus, "[w]hile the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution."  *Johnson* at 500.  "In the case of multiple punishments, a defendant is protected only from multiple punishments that were not intended by the legislature."  *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶ 8; *Johnson* at 499.

{¶ 30} Appellant's argument is predicated on her disorderly conduct conviction per Columbus City Code 2317.11(A)(1), comprising a lesser-included offense of R.C. 2903.13(A) assault.  Consistent with our determination in *State v. Keith*, 10th Dist. No. 08AP-28, 2008-Ohio-6122, ¶ 27-34, and considering *State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, paragraph two of the syllabus, we agree.  Assault carries a greater penalty than disorderly conduct.  Assault requires that the offender causes or attempts to cause the victim physical harm, an element not required by disorderly conduct, and assault cannot be committed without also committing disorderly conduct "[b]ecause a person will necessarily cause inconvenience, annoyance or alarm to another by causing or attempting to cause them physical harm, and because recklessly is a lesser mental state than knowingly."  *Keith* at ¶ 32; *see Evans* at paragraph two of the syllabus.

{¶ 31} The parties essentially debate the point in time a double jeopardy violation occurs with regard to convictions for both a greater and lesser-included offense in the same proceeding. Both parties agree that a jury found appellant guilty of both offenses and that the trial court sentenced appellant only on the assault charge. (Appellant's Brief at 28; Appellee's Brief at 16.) However, appellant argues that her double jeopardy rights were violated at the point the jury returned guilty verdicts for both the greater and lesser-included offense regardless of imposition of sentence. Appellee argues that for purposes of double jeopardy, a conviction occurs at sentencing, and in this case, the trial court only sentenced appellant and therefore convicted her of the assault charge.[1] For the following reasons, we disagree with appellant's argument.

{¶ 32} The double jeopardy protection prohibiting successive prosecution and cumulative punishment applies in the context of greater and lesser-included offenses. *Brown v. Ohio*, 432 U.S. 161 (1977). However, the presence of lesser and greater offenses, alone, does not control whether a double jeopardy violation for multiple punishments within a single proceeding occurs. As an example, although gross sexual imposition is a lesser-included offense of rape, a defendant may be properly charged with and convicted of both offenses in one proceeding in a scenario that includes distinct acts and/or victims. *See, e.g., State v. Reid*, 8th Dist. No. 83206, 2004-Ohio-2018, ¶ 75, *discretionary appeal not allowed*, 103 Ohio St.3d 1428, 2004-Ohio-4524 (concluding that lesser-included offense of gross sexual imposition did not merge with rape where one was not incidental to the other).

{¶ 33} Rather, in Ohio, the General Assembly codified double jeopardy protections in the context of multiple punishments for the same offense in R.C. 2941.25. *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, ¶ 10-12; *Whitfield* at ¶ 7 ("[W]e recognize that [R.C. 2941.25] incorporates the constitutional protections against double jeopardy. These protections generally forbid successive prosecutions and multiple punishments for the same offense."); *Brown* at ¶ 12 ("[T]he two-step test set forth in R.C. 2941.25, Ohio's

---

[1] Although we agree with the assessment of both parties that the trial court sentenced appellant on that single offense, this issue is not dispositive to resolving the assignment of error. Appellant does not assert that the trial court imposed separate sentences in violation of her double jeopardy and due process rights, challenge merger pursuant to R.C. 2941.25, or otherwise call attention to errors in the trial court's sentencing or entry. As a result, we proceed to resolve the assignment of error based on appellant's argument.

multiple-count statute, answered both the constitutional and state statutory inquiries regarding the General Assembly's intent to permit cumulative punishments for the same conduct."). Cases involving a lesser-included offense are subject to R.C. 2941.25 merger analysis at sentencing. *See, e.g., State v. Day*, 2d Dist. No. 2008 CA 70, 2009-Ohio-7046 (holding, in a case where the defendant was found guilty of burglary and aggravated burglary and given concurrent sentences on each, that "[s]ince a defendant cannot be convicted of both the greater and lesser offense [pursuant to R.C. 2941.25], the convictions are merged, and [the] conviction for burglary will be vacated"); *Reid* at ¶ 75 (discussing that, as greater and lesser-included offenses, "under R.C. 2941.25, a defendant may generally not be convicted of and sentenced for both gross sexual imposition and rape when they arise out of the same conduct").

{¶ 34} Furthermore, in *Whitfield* and restated by *Rogers* and *State v. Williams*, ___ Ohio St.3d ___, 2016-Ohio-7658, ¶ 17, the Supreme Court of Ohio specifically held that in the context of imposition of multiple punishments for the same offense, "a 'conviction' consists of a guilty verdict *and* the imposition of a sentence or penalty." (Emphasis sic.) *Whitfield* at ¶ 12; *Rogers* at ¶ 18. *See also State v. Crable*, 7th Dist. No. 04 BE 17, 2004-Ohio-6812, ¶ 7 ("[A] defendant cannot be found guilty and punished on both the greater offense and the lesser-included offense."); *Rutledge v. United States*, 517 U.S. 292 (1996) (holding concurrent sentences imposed for continuing criminal enterprise and the lesser-included offense of conspiracy to be cumulative punishment in a single trial in violation of double jeopardy).

{¶ 35} The cases cited by appellant in support of her proposition do not persuade us that a different rule should apply here. The majority of the cited cases do not identify the guilty verdict itself as the dispositive point for the double jeopardy violation in regard to multiple punishments for the same offense in a single proceeding and lack persuasive authority considering recent Ohio case law specifically addressing the meaning of "conviction" within the context of double jeopardy protections against multiple punishments in single proceedings. Therefore, considering all the above, we disagree that the jury's finding of guilt on both assault and disorderly conduct alone amounted to multiple punishments in violation of appellant's double jeopardy rights.

{¶ 36} Accordingly, we overrule appellant's first assignment of error.

### B. Third Assignment of Error

{¶ 37} For ease of argument, we will next consider appellant's third assignment of error in which appellant contends that the trial court erred when it permitted prosecution witnesses Clardy and Banks to offer their opinion that appellant is depicted in the surveillance footage. For the following reasons, we disagree.

{¶ 38} Evid.R. 701 governs the admissibility of opinion testimony by lay witnesses. It states "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶ 39} "Evid.R. 701 grants the trial court wide latitude in allowing or controlling lay witness opinion testimony." *State v. Kehoe*, 133 Ohio App.3d 591, 603 (12th Dist.1999). Generally, an appellate court reviews the decisions of the trial court concerning lay witness testimony for an abuse of discretion. *Id.* However, appellant did not object to Clardy's and Bank's testimony on this basis at trial, and, therefore, plain error review applies. " 'An alleged error is plain error only if the error is "obvious," *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 2002-Ohio-68, 759 N.E.2d 1240, and "but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph two of the syllabus.' " *State v. Arnold*, 147 Ohio St.3d 138, 2016-Ohio-1595, ¶ 65, quoting *State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, ¶ 181. *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, ¶ 62, quoting Crim.R. 52(B) (" 'Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.' "). Plain error should be noticed only " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *Id.*, quoting *Long* at 97.

{¶ 40} Appellant argues that prosecution witnesses Clardy and Banks impermissibly "offered lay opinion testimony" that appellant was depicted in the surveillance footage due to the lack of evidence that they were familiar with appellant prior to the altercation. (Appellant's Brief at 1.)

{¶ 41} However, regardless of Clardy's and Banks' familiarity with appellant prior to the altercation, each demonstrated that their opinion was rationally based on their

personal knowledge of the identity of appellant in the video. They testified that they were present at the altercation, had close contact with the assailant, and recognized appellant's face and distinctive clothing from the altercation. Their opinion was helpful to the jury to understand their testimony regarding identification of appellant as the person who hit Clardy. The circumstances of this case distinguish it from the cases cited by appellant in which the witnesses lacked sufficient contact with the defendant to aid the jury with their opinion, and we find no error in the trial court's decision to allow Clardy and Banks to testify regarding their opinion that appellant was the person who attacked Clardy in the video. Furthermore, because Clardy and Banks identified appellant based on their own recollection of the incident and identified appellant as Clardy's attacker in open court, appellant has not proven that but for the alleged error, the outcome of the trial clearly would have been otherwise.

{¶ 42} Appellant additionally mentions that such testimony has limited probative value and was cumulative and confusing, implicating Evid.R. 403. Evid.R. 403 states:

> **Exclusion of relevant evidence on grounds of prejudice, confusion, or undue delay**
>
> **(A) Exclusion mandatory.** Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
>
> **(B) Exclusion discretionary.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence.

(Emphasis sic.)

{¶ 43} Clardy's and Banks' testimony that appellant was depicted in the video assisted the jury in identification of the perpetrator—the solitary issue at trial. We see no indication that their testimony confused the issue at trial and, therefore, find no grounds for mandatory exclusion under Evid.R. 403(A). We likewise disagree that such testimony constituted a needless presentation of cumulative evidence, as the testimony aided the jury's understanding of Clardy's and Banks' recognition of appellant's face. As such, we do not believe the trial court erred in declining to exclude the testimony under Evid.R.

403(B).  Considering the facts of this case, the trial court did not err or abuse its discretion in not excluding Clardy's and Banks' testimony identifying appellant in the video.

{¶ 44} Accordingly, appellant's third assignment of error is overruled.

### C.  Second Assignment of Error

{¶ 45} In her second assignment of error, appellant contends that the trial court erred when it allowed appellee's exhibit 14, the cell phone recording of the surveillance footage, to be admitted into evidence, in violation of Evid.R. 901, 1002, 1003, and 403(A). For the following reasons, we disagree.

{¶ 46} The admission of video evidence rests within the sound discretion of the trial court.  *State v. Farrah*, 10th Dist. No. 01AP-968 (Apr. 18, 2002).  An abuse of discretion connotes more than an error of law or judgment and implies that the court's attitude is clearly unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 47} Appellant primarily argues that the video was not properly authenticated at trial in violation of Evid.R. 901.  Authentication or identification is a condition precedent to admissibility of evidence.  Evid.R. 901(A).  This requirement is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. Evid.R. 901(A).  The rule provides a non-exhaustive list of illustrations as examples of authentication conforming with the rule, including, pursuant to Evid.R. 901(B)(1), testimony of a witness with knowledge that a matter is what it is claimed and, pursuant to Evid.R. 901(B)(4), distinctive characteristics taken in conjunction with the circumstances. The threshold for authentication is low: " 'The proponent need not offer conclusive evidence as a foundation [but] must merely offer sufficient evidence to allow the question as to authenticity or genuineness to reach the jury.' "  *State v. Callender*, 10th Dist. No. 15AP-15, 2015-Ohio-4255, ¶ 32, quoting *State v. Caldwell*, 9th Dist. No. 14720 (Dec. 4, 1991).  *Hirsi v. Davis Creek Auto Sales*, 10th Dist. No. 15AP-415, 2016-Ohio-7569, ¶ 50.

{¶ 48} "Photographic evidence, including videotapes, can be admitted under a 'pictorial testimony' theory or a 'silent witness' theory."  *State v. Hoffmeyer*, 9th Dist. No. 27065, 2014-Ohio-3578, ¶ 19, quoting *Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121, 129-30 (1991). "Under the pictorial testimony theory, evidence is admissible 'when a sponsoring witness can testify that it is a fair and accurate

representation of the subject matter, based on that witness' personal observation.' " *Id.*, quoting *Midland Steel Prods.* at 129. Thus, the evidence " 'is merely illustrative of a witness' testimony.' " *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, ¶ 150, quoting *Midland Steel Prods.* at 129. " 'In authenticating evidence through this method, there is no need to call the witness who took the photographs as long as a witness with knowledge can testify that the photograph is a fair and accurate depiction.' " *State v. Scott*, 12th Dist. No. CA2012-06-052, 2013-Ohio-2866, ¶ 36, quoting *State v. Freeze*, 12th Dist. No. CA2011-11-209, 2012-Ohio-5840, ¶ 66.

{¶ 49} Appellee primarily argues that the incompleteness and poor quality of the video affects its authenticity and trustworthiness. However, Clardy testified that she personally recorded the surveillance video with her cell phone, had a video made of it and presented it personally to the prosecutor's office, and Clardy and Banks each testified that they were present at the altercation and that the video fairly and accurately depicts the incident. As such, we agree with appellee that Clardy and Banks serve as pictorial witnesses and that their testimony was sufficient to authenticate the video pursuant to Evid.R. 901(B)(1). Under these circumstances, the trial court did not abuse its discretion in allowing the video to be admitted into evidence.

{¶ 50} Appellant next argues that admission of the recording violated Evid.R. 1002 and 1003. Evid.R. 1002 provides, "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio." One such exception is provided in Evid.R. 1003, which states "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." Under Evid.R. 1001(4), a duplicate includes "a counterpart produced * * * by means of photography, including enlargements and miniatures, or by mechanical or electronic re-recording * * * or by other equivalent techniques which accurately reproduce the original."

{¶ 51} The decision to admit duplicates is within the sound discretion of the trial court. *State v. Tibbetts*, 92 Ohio St.3d 146, 160 (2001). The party seeking to exclude a

duplicate has the burden of demonstrating that the duplicate should be excluded. *Id.* A trial court does not abuse its discretion in admitting a duplicate where the party seeking to exclude the duplicate merely speculates regarding its authenticity. *State v. Jones*, 8th Dist. No. 102318, 2015-Ohio-4694, ¶ 33; *State v. Garcia*, 3d Dist. No. 5-01-12 (Sept. 10, 2001).

{¶ 52} Several appellate courts have found video recordings of surveillance footage to be admissible duplicates pursuant to Evid.R. 1003. *See, e.g., State v. Taylor*, 8th Dist. No. 98107, 2012-Ohio-5421, ¶ 39 (cell phone video recording of portions of surveillance video and excerpted still-frame photographs admissible duplicates under Evid.R. 1003 where appellant did not raise genuine questions as to their trustworthiness); *Garcia* (video duplicate of store surveillance video admissible under Evid.R. 1003 where defendant merely alleged, without strong support, that the duplicate may have omitted important parts and the maker of the duplicate testified that the duplicate was a true and accurate copy of the original); *Jones* at ¶ 36 (portions of video tape of a store surveillance footage an admissible duplicate where maker of duplicate testified that the footage was not altered or tampered with such that it should be deemed unreliable and that the duplicate accurately reflected the original).

{¶ 53} Here, appellant concedes that the video admitted into evidence was a duplicate. Appellant argues the test for the admission of duplicates under Evid.R. 1003 was not met because the authenticity of the video was "hotly disputed" primarily due to its "lack of completeness and gaps" and because to do so would be unfair. (Appellant's Brief at 38, 39.)

{¶ 54} Contrary to appellant's position, our review of the record shows that appellant did not meet her burden in raising a genuine question as to the authenticity of the original or demonstrating that in the circumstances it would be unfair to admit the duplicate in lieu of the original. Appellant did not discuss Evid.R. 1003 at all in her motion in limine and gives minimal argument specifically to this point at trial beyond asking why efforts were not made to preserve the original and questioning the reliability generally. Although appellant alleged the video was incomplete, she did so through challenges to other rules of evidence without discussing how these points impact authenticity. Furthermore, appellee presented testimony supporting the authenticity of

the original. Clardy testified that she personally viewed the original surveillance footage, recorded the entire footage of the incident with her cell phone, had no control over the skips that occurred in the video, that the video played for the jury was the same video she provided to prosecutors, and that the duplicate of the original was an accurate depiction of the altercation. Overall, after reviewing the record and the video, appellant did not meet her burden in proving the trial court acted unreasonably, arbitrarily, or unconscionably in this case. Therefore, we find that the trial court did not abuse its discretion by admitting the duplicate recording of the original surveillance footage into evidence.

{¶ 55} Lastly, appellant argues that the video should have not been admitted pursuant to Evid.R. 403(A). As provided earlier, Evid.R. 403(A) covers the mandatory exclusion of relevant evidence and states "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 56} Appellant argues that the video is "indistinct making it impossible for the jury to objectively determine whether Banks' and Clardy's narratives were accurate" and "inaudible." (Appellant's Brief at 36.) We disagree that the video is so indistinct that it would not aid the jury in objectively determining the accuracy of Clardy's and Banks' testimony. This is a case hinging on identification of the perpetrator where the alleged victim and eyewitness testified to remembering the face of the assailant from the assault. The video, although dark, still provides objective information regarding the proximity of Clardy and Banks to the participants, how long of a look Clardy and Banks may have been able take of the participants, the distinctive clothing of each participant, and the order of events of the incident. As such, the video holds high probative value in assisting the jury in assessing the ability of Clardy and Banks to see and accurately remember the face of the primary attacker. In such circumstances, we do not find that due to the quality of the video and the lack of audibility, the probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. *State v. Simmons*, 2d Dist. No. 24009, 2011-Ohio-2068, ¶ 15 (finding that to the extent a surveillance video with partially blocked footage corroborates the eyewitness testimony and refutes the defendant's own testimony as to what occurred, it has significant

probative value that is not substantially outweighed by the danger of unfair prejudice under Evid.R. 403(A)).  Therefore, the trial court did not abuse its discretion in not excluding the evidence under Evid.R. 403(A).

{¶ 57} Accordingly, for all the above stated reasons, appellant's second assignment of error is overruled.

### D.  Fourth Assignment of Error

{¶ 58} In her fourth assignment of error, appellant contends that her right to a fair trial was undermined when the trial court refused to allow the defense to avail itself of Evid.R. 613 and 616 to impeach the testimony of Clardy during cross-examination.  We disagree.

{¶ 59} "Cross-examination shall be permitted on all relevant matters and matters affecting credibility."  Evid.R. 611(B).  "The limitation of * * * cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case." *State v. Acre*, 6 Ohio St.3d 140, 145 (1983).

{¶ 60} Several evidence rules, as well as common-law principles, cover impeachment. *See* notes to Evid.R. 608.  Under the general rule of impeachment, the credibility of a witness may be attacked by any party.  Evid.R. 607(A).  However, "[a] questioner must have a reasonable basis for asking any question pertaining to impeachment that implies the existence of an impeaching fact."  Evid.R. 607(B).  Pertinent to appellant's assignment of error, under Evid.R. 613, "[i]n examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel."  Evid.R. 613(A).  Furthermore, extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:

> (1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
>
> (2) The subject matter of the statement is one of the following:

(a)  A fact that is of consequence to the determination of the action other than the credibility of a witness;

(b)  A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B);

(c)  A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

Evid.R. 613(B).  As we state in *State v. Ferguson*, 10th Dist. No. 12AP-1003, 2013-Ohio-4798, ¶ 15:

Evid.R. 613(B), thus, allows introduction of extrinsic evidence of a prior statement only after a proper foundation has been laid through direct or cross-examination in which: " ' "(1) the witness * * * is presented with the former statement; (2) the witness is asked whether he made the statement; (3) the witness is given an opportunity to admit, deny or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness on the inconsistent statement." ' " *State v. Kulasa*, 10th Dist. No. 11AP-826, 2012-Ohio-6021, ¶ 12, quoting *State v. Mack*, 73 Ohio St.3d 502, 514-15, 1995 Ohio 273, 653 N.E.2d 329 (1995), quoting *State v. Theuring*, 46 Ohio App.3d 152, 155, 546 N.E.2d 436 (1st Dist.1988).  If a witness denies making a prior inconsistent statement, a proper foundation has been laid, and if, in addition, the prior inconsistent statement does not relate to a collateral matter, extrinsic evidence is admissible.  *Kulasa* at ¶ 19.  If a witness admits having made the contradictory statements, however, then extrinsic evidence of the prior inconsistent statement is not admissible.  *In re M.E.G.*, 10th Dist. No. 06AP-1256, 2007-Ohio-4308; *State v. Hill*, 2d Dist. No. 20028, 2004-Ohio-2048, ¶ 40.

{¶ 61} Furthermore, pursuant to Evid.R. 616(C), "[s]pecific contradiction":

Facts contradicting a witness's testimony may be shown for the purpose of impeaching the witness's testimony.  If offered for the sole purpose of impeaching a witness's testimony, extrinsic evidence of contradiction is inadmissible unless the evidence is one of the following:

(1)  Permitted by Evid.R. 608(A), 609, 613, 616(A), 616(B), or 706;

(2) Permitted by the common law of impeachment and not in
conflict with the Rules of Evidence.

{¶ 62} The issue in this case arose during appellant's cross-examination of Clardy. The transcript shows that after appellant asked Clardy about the car that kept riding past her mother's house, that she later believed to have followed her to the market, defense counsel and Clardy held the following exchange:

Q. Have you ever had any other problems with other people
following you?

A. No.

Q. Have you ever had any problems with people other than
Cynthia threatening you?

A. No.

Q. Have you ever had problems with anybody other than
Cynthia attempting to fight you?

A. No.

(Tr. Vol. I at 233.)

{¶ 63} At that point, appellee objected on the basis of relevance. Counsel for appellant explained that it intended to question Clardy with two documents, which were apparently papers filed in the court of common pleas in 2011 accusing people of following and threatening her. Defense counsel stated two purposes for doing so: to present evidence that other people may have attacked Clardy and to impeach Clardy's testimony as inconsistent with or in contradiction to prior statements. After a wide-ranging discussion, the trial court ultimately sustained that objection and disallowed further questioning on the subject, pursuant to Evid.R. 404(B), and because appellant had not presented alternative methods for the court to allow the questioning. The 2011 documents were not proffered into evidence.

{¶ 64} As a preliminary issue, based on this record, we cannot fully review the assignment of error to the extent it challenges appellant's inability to use extrinsic evidence under Evid.R. 613(B) and 616(C). The testimony here was cut-off at a point prior to the defense's hypothetical use of extrinsic evidence, which was not actually

presented to Clardy. In other words, the error, if any, comes from the court's decision to disallow questioning regarding her statements in the prior documents without the use of extrinsic evidence.

{¶ 65} The trial court's exact reason for disallowing any further questioning regarding the 2011 documents is unclear. It sustained the objection regarding relevance, while also seemingly basing a decision on impermissible other acts evidence under Evid.R. 404(B).

{¶ 66} While we do not see from the record that the evidence was being improperly advanced to prove Clardy acted in conformity with her character, in violation of Evid.R. 404(B), we do find another ground raised by appellee, the lack of inconsistent statements, persuasive. From this record, we simply cannot confirm whether Clardy's statements were inconsistent or contradicting. Moreover, even if the trial court erred in not permitting appellant to impeach Clardy with the 2011 statements, the error was harmless. The evidence showed that appellant had a close relationship with Aponte, having shared in raising her, and lived near the market and that appellant's niece and Clardy had fought the prior day. Clardy's brother's testimony, in which he stated he personally viewed appellant during the fight from a close proximity and identified appellant as the person who assaulted Clardy, supplemented her testimony to the same. Therefore, considering all the above, appellant's argument lacks merit.

{¶ 67} Accordingly, appellant's fourth assignment of error is overruled.

## IV. CONCLUSION

{¶ 68} Having overruled appellant's four assignments of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

BROWN, J., concurs.
HORTON, J., concurring in judgment only.

———————————