[Cite as *State v. Patterson*, 2018-Ohio-3348.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170329 |
| | | TRIAL NO. B-1700253 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| TAUREICE PATTERSON, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 22, 2018


*Paula E. Adams,* Assistant Hamilton County Prosecuting Attorney, for Plaintiff-Appellee,

*Michaela M. Stagnaro,* for Defendant-Appellant.

**DETERS, Judge.**

{¶1} Defendant-appellant Taureice Patterson appeals his convictions for felonious assault, having weapons while under a disability, and receiving stolen property. Because we conclude that his eight assignments of error have no merit, we affirm the trial court's judgment.

## *Background*

{¶2} The state indicted Patterson after a shooting in Avondale where the victim had been struck in the knee by a bullet and left in the street. The victim had identified Patterson and DeMarcio ("Marcio") Peck as the assailants to police, and the police eventually apprehended Patterson four months after the shooting while driving a stolen vehicle. Prior to trial, Patterson moved to dismiss the charge for having weapons while under a disability, and the trial court overruled his motion. The matter proceeded to a jury trial.

{¶3} At trial, the victim testified that he had been walking down a street in Avondale late at night on September 11, 2016, when Patterson, Peck, and a few others he did not know, struck up a conversation with him. After exchanging a few words, Patterson and Peck pulled out handguns and demanded the victim's designer pants. The victim refused. Patterson threatened to shoot him and then tried to punch him. The victim ducked, and a gun discharged. The bullet struck the victim in the knee, and the victim collapsed in the street. Patterson, Peck, and the others fled in a vehicle.

{¶4} Officer Anthony Salyers testified that he had been the first police officer on the scene after the shooting. The victim stated that two black males had tried to rob him at gunpoint. The victim identified the shooter as "Marcio," whom he

knew from the neighborhood and from school. Officer Salyers followed the victim to the hospital. Officer Salyers used Facebook to locate photographs of "Marcio" and showed three or four photographs to the victim. The victim identified the person in the photographs as "Marcio," and police confirmed his identity as Peck. At the hospital, the victim stated to Officer Salyers that the other person involved was "Reese." Officer Salyers relayed this information to Detective Michael Kaeser, who investigated the shooting. Kaeser testified that police officers in the "Intelligence Unit" had identified "Reese" as Patterson, and they had sent Kaeser a Facebook photograph of Patterson. Kaeser showed the victim the photograph, and the victim confirmed Patterson's identity as "Reese." The state issued an arrest warrant for Patterson.

{¶5} Springfield Township Officer Pat Kemper testified that he had been patrolling Hamilton Avenue in January 2017 when he noticed a vehicle that matched the description of a vehicle that had been reported stolen that day. When Officer Kemper activated the lights on his patrol car and made a U-turn, the vehicle veered off of the side of the road and struck a post. The two occupants in the vehicle exited and ran. Officer Kemper gave a description of the occupants to a K-9 unit. The K-9 unit found Patterson, whom Officer Kemper identified as the driver. At the police station, Officer Kemper asked Patterson about the outstanding arrest warrant related to the shooting. Patterson admitted that he had been present during the shooting, but he maintained that he had not been the shooter.

{¶6} The jury found Patterson guilty on all counts. The trial court imposed consecutive sentences for a total of 15½ years in prison. Patterson appeals.

### *Use of Prior Juvenile Adjudication*

{¶7}     In his first assignment of error, Patterson argues that the trial court erred by overruling Patterson's motion to dismiss the having-weapons-while-under-disability count.  Patterson argues that the use of his prior juvenile adjudication as the basis for his weapons-under-disability conviction violates due process, because juveniles are not afforded the constitutional right to a jury trial.  After submission of Patterson's appeal to this court, the Ohio Supreme Court decided that a prior juvenile adjudication may be an element of a weapons-under-disability offense without violating due process.  *See State v. Carnes*, Slip Opinion No. 2018-Ohio-3256.  Therefore, we overrule Patterson's first assignment of error.

### *Evidentiary Issues*

{¶8}     In his second assignment of error, Patterson argues that the trial court erred as a matter of law by permitting the state to introduce irrelevant and prejudicial evidence in violation of Patterson's right to a fair and impartial trial.  Patterson attacks the introduction of the Facebook photograph used by the victim to identify Patterson, and the introduction of recorded phone calls from the jail.  A trial court has broad discretion in admitting evidence, and this court should not reverse unless the admission caused material prejudice.  *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 62.

{¶9}     ***Facebook photograph***.  The state first introduced the Facebook photograph of Patterson in direct examination of the victim.  The prosecutor showed the victim the photograph, and asked him if he knew the man in the photograph, to which the victim replied that he did, and that it was Patterson.  The prosecutor asked if Patterson was holding anything in the picture, and the victim said, "A gun."  The

4

prosecutor then asked: "You seem to be somewhat familiar with handguns, firearms. Does that look like the gun that he had on September 11?"  The victim answered, "I would say so.  Small handgun."  The prosecutor then asked the victim if he had seen that photograph on Facebook, and he replied that he had.  This entire exchange took place without an objection by Patterson.

{¶10} The state used the same Facebook photograph during direct examination of Detective Kaeser.  Kaeser testified that he had given the street names "Marcio" and "Reese" to the Intelligent Unit, which tracks down suspects using police databases and social media.  In response, Kaeser had received Patterson's name as "Reese," as well as the Facebook photograph.  Kaeser then showed Patterson's Facebook photograph to the victim, who confirmed that it was "Reese."

{¶11} At the conclusion of the detective's direct examination, the prosecutor moved to admit the Facebook photograph into evidence, and Patterson objected on the basis that the detective had no knowledge to verify that the photograph came from Patterson's Facebook account, and its admission would be more prejudicial than probative.  The trial court overruled the objection.

{¶12} On appeal, Patterson argues that the trial court erred in admitting the Facebook photograph, because it was not properly authenticated under Evid.R. 901(A), and unduly prejudicial under Evid.R. 403.

{¶13} Authentication of evidence prior to its admission requires "evidence sufficient to support a finding that the matter in question is what its proponent claims."  Evid.R. 901(A).  Testimony by a witness with knowledge, "that a matter is what it is claimed to be," is an acceptable method of authentication.  Evid.R. 901(B)(1).  Authentication is "a very low threshold, which is less demanding than the

preponderance of the evidence." *State v. White*, 4th Dist. Scioto No. 03CA2926, 2004-Ohio-6005, ¶ 61. Circumstantial evidence can be used to provide authentication. *State v. Paster*, 2014-Ohio-3231, 15 N.E.3d 1252, ¶ 32 (8th Dist.).

{¶14} Here, the victim testified that he had seen the photograph of Patterson on Facebook. Kaeser testified that he had received the photograph from the Intelligence Unit, a unit of police officers who search social media in the course of investigations, in order to get a name for "Reese." The victim's and Kaeser's testimony meets the low threshold required to authenticate the Facebook photograph. Therefore, the trial court did not abuse its discretion in determining that the low threshold for authentication had been met.

{¶15} Patterson also argues that the trial court erred in admitting the photograph under Evid.R. 403, because the victim did not testify that the gun in the picture was the same gun used in the commission of the crime, and therefore the picture was used to depict Patterson as a gun-toting individual.

{¶16} Otherwise relevant evidence is not admissible if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Evid.R. 403(A). A trial court does not abuse its discretion in admitting a photograph of the defendant with a gun where a witness testifies that a similar gun was used in the commission of the crime. *See State v. Scott*, 2d Dist. Montgomery No. 27254, 2018-Ohio-198 (no abuse of discretion in a trial court's admission of two Facebook photographs depicting the defendant holding a gun where two witnesses testified that they had seen the defendant in possession of a gun the night of the shooting, which roughly matched the gun in the Facebook photograph); *compare State v. Gordon*, 8th Dist. Cuyahoga No. 106023, 2018-Ohio-2292, ¶ 72 (determining that

the trial court erred in admitting a Facebook photograph under Evid.R. 404(B), because the state "did not suggest that one of the guns in the photograph was the murder weapon in the instant case.").

{¶17} The victim knew "Reese," but not his name, and therefore, the detective used the photograph in the course of his investigation to confirm that the person whom the victim knew as "Reese" was the person in the photograph. Thus, the Facebook photograph was probative of "Reese's" identity as Patterson. The Facebook photograph also showed a "small gun" similar to the gun that the victim had seen Patterson brandish. Thus, the photograph was probative of whether Patterson had a gun that night, or was merely present at the scene, as the defense suggested. Therefore, the trial court did not abuse its discretion in admitting the photograph.

{¶18} *Recorded Jail Calls.* The state introduced testimony from a representative of the company who provides the telephone service at the jail. The representative testified in detail regarding how the phone system works, including that each inmate has a unique identification number and creates a four-digit passcode in order to place calls. The representative testified that the calls the state sought to admit had been placed from Patterson's inmate number. The representative admitted on cross-examination that he could not be certain whether Patterson had placed the phone calls or whether someone else using his unique inmate number and passcode had placed the calls. The state then played an audio recording of the phone calls for the jury. In the calls, a man can be heard discussing a court case and "Marcio" with the recipients of the call.

{¶19} Patterson argues that the trial court erred in admitting the jailhouse calls because they were not properly authenticated, were irrelevant, contained hearsay from third persons, and unfairly prejudiced Patterson by allowing the jury to hear that Patterson had made the calls from jail.

{¶20} As to authentication, a sound recording of a telephone call can be authenticated by evidence "describing a process or system used to produce a result and showing that the process or system produces an accurate result." *State v. Brown*, 1st Dist. Hamilton No. C-120327, 2013-Ohio-2720, ¶ 17, quoting Evid.R. 901(B)(9). The testimony of the phone company representative laid the foundation that the calls came from Patterson's inmate number at the jail. From there, the jury could infer that Patterson placed the calls. *See Brown* at ¶ 22.

{¶21} As to relevancy, evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Admissibility of relevant evidence is low threshold, with a policy of favoring admission for the trier of fact to weigh. *State v. Morgan*, 31 Ohio App.3d 152, 154, 509 N.E.2d 428 (1st Dist.1986). In closing argument, the prosecutor told the jury that the calls reflect a man named "Reese" talking about "Marcio" and the court case. The caller discusses whether "Marcio" will testify for him. The prosecutor argued that the calls reflect Patterson's concern with mounting a defense for trial, and not a concern with his innocence. Therefore, the jailhouse phone calls were probative of Patterson's role in the shooting as either an innocent bystander or an active participant.

{¶22} Patterson argues that the recorded phone calls contained inadmissible hearsay. Patterson points out that a woman can be heard discussing an alibi and whether the caller has one, and that the state relied on this comment in closing argument. Hearsay must be offered for the truth of the matter asserted. *See* Evid.R. 801(C). Although the jail calls contained statements from people other than Patterson, the state mainly relied on the statements made by Patterson to show that Patterson's actions were inconsistent with those of an innocent bystander.

{¶23} Patterson argues that the recorded jail calls unfairly prejudiced him because it called attention to the fact that he was in jail. However, "a comment referring to a defendant being in jail is not per se a prejudicial remark." *State v. Ellis*, 10th Dist. Franklin No. 05AP-800, 2006-Ohio-4231, ¶ 21. Here, the jury heard that Patterson had been arrested by Officer Kemper after driving a stolen vehicle; therefore, the fact that the jury heard that Patterson made calls from jail does not equate to unfair prejudice.

{¶24} Moreover, the trial court provided the jury with a limiting instruction, which stated that the jury "may not consider the fact that the defendant was an inmate as evidence of guilt. The recorded phone calls contain statements made by individuals other than the purported defendant. You may not consider the statements made by others as evidence in the case * * *." An appellate court assumes that a jury follows the limiting instructions given by a trial court. *See State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶ 194. Therefore, the trial court did not abuse its discretion in admitting the phone calls.

{¶25} We overrule Patterson's second assignment of error.

### *Motion for a Mistrial*

{¶26} In his third assignment of error, Patterson argues that the trial court erred as a matter of law by overruling his motion for a mistrial. Patterson moved for a mistrial after Officer Salyers testified that he had searched for Facebook pictures of Peck on his cellphone and had shown them to the victim. Patterson argued that the officer had failed to save the Facebook photos and that the photos could have contained Patterson, thus tainting the victim's recollection of events.

{¶27} A mistrial is appropriate only when a fair trial is no longer possible. *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). The trial court's decision whether to grant a mistrial is reviewed for an abuse of discretion. *Id.*

{¶28} Patterson argues that Peck's Facebook photos "could have been exculpatory." Where evidence in the state's possession is lost or destroyed, and the evidence in question is "potentially useful," its destruction does not violate due process unless the police acted in bad faith. *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 9-10; *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). The Due Process Clause does not " 'impos[e] on the police an undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance in a particular prosecution.' " *State v. Phelps*, 1st Dist. Hamilton No. C-100096, 2011-Ohio-3144, ¶ 12, quoting *Youngblood*.

{¶29} The Facebook photographs depicting Peck would be at most potentially useful for Patterson's defense. Nothing suggests that Patterson was also in those photographs. Moreover, nothing in Officer Salyers's testimony suggests that he acted in bad faith, but merely attempted to get a detailed description of an alleged

shooter in the minutes after a shooting. The trial court did not abuse its discretion in refusing to grant a mistrial.

{¶30} We overrule the third assignment of error.

### *Prosecutorial Misconduct*

{¶31} In his fourth assignment of error, Patterson argues that the trial court erred as a matter of law by permitting the prosecutor to make improper remarks during closing argument, prejudicing Patterson's right to a fair trial. When a defendant alleges prosecutorial misconduct during closing argument, courts must keep in mind that prosecutors have some latitude in closing argument, and the test is whether the remarks were improper and, if so, whether they prejudicially affected the substantial rights of the defendant. *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984); *State v. Apanovitch*, 33 Ohio St.3d 19, 24, 514 N.E.2d 394 (1987).

{¶32} Patterson argues that the prosecutor improperly commented on his notice of alibi in closing. Patterson's counsel objected, and the trial court sustained the objection with an instruction to the jury to disregard the statement. Thus, even if the prosecutor's statement was improper, we assume the jury followed the trial court's instruction and did not consider the statement. *See Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, at ¶ 194.

{¶33} Patterson also argues that the prosecutor improperly relied on the jail calls during closing argument to shift the burden of proof. The prosecutor commented on the jail calls in order to show Patterson's concern about his upcoming trial, rather than his concern as an innocent bystander. The prosecutor's conduct was not improper with regard to the jail calls.

11

{¶34} Patterson also argues that the prosecutor improperly characterized the law on complicity. At the beginning of closing argument, the prosecutor told the jury that mere presence at the scene of a shooting is not enough to prove complicity with regard to the felonious-assault charge, and that active participation is required. The prosecutor stated that once Patterson and Peck had pulled out their guns in the course of the attempted robbery, "[i]f somebody gets shot and you are pointing a gun, I don't care if you don't pull the trigger, you are just as responsible as the person that did." Patterson does not argue why these statements are an improper characterization of the law on complicity.

{¶35} Finally, Patterson does not demonstrate how this alleged improper conduct by the prosecutor deprived him of a fair trial.

{¶36} We overrule the fourth assignment of error.

### Jury Instruction on Complicity

{¶37} In his fifth assignment of error, Patterson argues that the trial court erred as a matter of law by improperly instructing the jury concerning the law on complicity. Patterson argues that the trial court did not instruct the jury regarding a mental state for the offense. This court reviews a trial court's decision with respect to requested jury instructions under an abuse-of-discretion standard. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 240.

{¶38} In this case, the trial court instructed the jury regarding the elements of felonious assault, as charged in Count 1 of the indictment. The trial court instructed that the state must prove that the defendant knowingly caused serious physical harm to the victim, and the trial court then defined knowingly. The trial court also stated with respect to complicity that "the law provides that any person

acting with the culpability required for the commission of the offense who conspires or aids another in the commission of a crime is regarded as if he was the principal offender * * *."

{¶39} Because the trial court had already instructed the jury regarding felonious assault, including the mens rea, the trial court was not required to repeat its earlier instruction when instructing on complicity. The trial court did not abuse its discretion in instructing the jury in this manner.

{¶40} We overrule the fifth assignment of error.

### Ineffective Assistance of Counsel

{¶41} In his sixth assignment of error, Patterson argues that he was denied the effective assistance of counsel, because counsel failed to file a motion to suppress his admission to Officer Kemper under *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

{¶42} To succeed on a claim for ineffective assistance of counsel, a defendant must prove that counsel's performance was deficient, and that the deficient performance deprived the defendant of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's actions are presumed competent, and a defendant bears the burden to prove ineffective assistance of counsel. *State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988). In order to demonstrate deficient performance, a defendant must show that a motion to suppress would have been meritorious. *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 35.

{¶43} After Patterson had been arrested for driving the stolen vehicle and taken into custody at the police station, Officer Kemper asked Patterson what the

allegations were against him regarding the outstanding felonious-assault warrant. Patterson then admitted that he had been at the scene that night, but was not the shooter. Officer Kemper testified that he had not given Patterson his *Miranda* warnings. He testified that, as a general matter, an officer gives a suspect *Miranda* warnings upon arrest, but he did not know specifically whether this had been done in this case. On this record, Patterson cannot meet his burden to show that a motion to suppress would have been granted.

{¶44} We overrule Patterson's sixth assignment of error.

### Sufficiency and Weight of the Evidence

{¶45} In his seventh assignment of error, Patterson argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶46} In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crimes beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

{¶47} ***Felonious assault***. Patterson argues that the state failed to prove he was complicit in the felonious assault. The complicity statute prohibits a person from aiding or abetting another in committing an offense. R.C. 2923.03(A).

14

Felonious assault occurs when a person knowingly causes another serious physical harm. R.C. 2903.11(A)(1). A person acts knowingly "regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶48} Patterson argues that the state failed to prove the mens rea for felonious assault, because, according to the victim's testimony, the gun discharged, and Peck and Patterson looked "surprised." The evidence adduced by the state at trial showed that Patterson and Peck pointed guns at the victim, Patterson threatened to shoot him, and a gun discharged. From these circumstances, the knowledge element required for felonious assault can be inferred.

{¶49} Patterson also argues that the state failed to prove that he was present at the shooting. Patterson points out that the victim initially failed to mention "Reese's" involvement and mentioned only "Marcio," accordingly, the police report only mentioned "Marcio." Although immediately after the incident the victim did not tell Officer Salyers about Patterson's involvement, the victim told him that two black males had been involved. The victim then told police about Patterson shortly thereafter at the hospital. Moreover, Patterson's own admission to Officer Kemper placed him at the scene of the shooting. The victim's credibility with regard to Patterson's involvement was primarily an issue for the jury in this case. *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). Therefore, this conviction was supported by sufficient evidence and was not against the manifest weight of the evidence.

{¶50} *Having Weapons While Under a Disability*. R.C. 2923.13(A)(2) prohibits a person from carrying a gun if that person has been

adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence. The victim testified that Patterson had a gun that night, and the state and Patterson stipulated that Patterson was under a disability at the time of the shooting. Therefore, this conviction was supported by sufficient evidence and was not against the manifest weight of the evidence.

{¶51} *Receiving Stolen Property*. Receiving stolen property requires the state to prove that a defendant received, retained, or disposed of another person's property when the defendant knew or had reasonable cause to believe that the property had been stolen. R.C. 2913.51(A). Patterson does not dispute that the vehicle he had been riding in when Officer Kemper pursued him had been stolen. Patterson argues that the state failed to prove that he knew or had reasonable cause to believe that the vehicle was stolen.

{¶52} Convictions can be based solely on circumstantial evidence. *State v. Franklin*, 62 Ohio St.3d 118, 124, 580 N.E.2d 1 (1991). In determining that a conviction for receiving stolen property is supported by sufficient evidence and not against the manifest weight of the evidence, courts have relied on the fact that a witness saw the defendant in the car shortly after it was stolen, and that the defendant abandoned the vehicle in fleeing from police. *See State v. Reed*, 10th Dist. Franklin No. 08AP-20, 2008-Ohio-6082; *In re Houston*, 8th Dist. Cuyahoga No. 73950, 1998 WL 827608, *2 (Nov. 25, 1998).

{¶53} Here, the vehicle had been stolen from the owner's driveway on the same day that Officer Kemper spotted the vehicle on the road. Officer Kemper testified that the vehicle veered off of the road and hit a post as soon as Officer

Kemper turned around to follow the vehicle. Officer Kemper saw Patterson driving the vehicle, and Patterson took off running after the crash. Police, with the assistance of the K-9 unit, located Patterson a short time later hiding in someone's backyard. Therefore, this conviction was supported by sufficient evidence and was not against the manifest weight of the evidence.

{¶54} We overrule the seventh assignment of error.

*Sentencing*

{¶55} In his eighth assignment of error, Patterson argues that the trial court erred in sentencing him. Patterson argues that the court erred in imposing maximum, consecutive sentences.

{¶56} When reviewing felony sentences, this court applies the standard articulated in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1 and 21-22; *State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 9-11 (1st Dist.). "Under R.C. 2953.08(G)(2), we may only modify or vacate [a defendant's] sentence if we 'clearly and convincingly find' that either (1) the record does not support the mandatory sentencing findings or (2) that the sentence is 'otherwise contrary to law.' " *White* at ¶ 9-11.

{¶57} ***Consecutive Sentences.*** R.C. 2929.14(C)(4) governs the imposition of consecutive sentences. R.C. 2929.14(C)(4) requires the trial court to make certain findings before imposing consecutive sentences. First, the trial court must find that consecutive sentences are necessary either to protect the public from future crime or to punish the offender. The court must then find the imposition of consecutive sentences is not disproportionate to the seriousness of the offender's conduct and the

danger he poses to the public. Finally, the court must find that one of the following conditions applies:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶58} A trial court is required to make the findings in R.C. 2929.14(C)(4) at the sentencing hearing and in the sentencing entry, but the trial court is not required to provide reasons to support the findings. *See State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus; *State v. McGee*, 1st Dist. Hamilton No. C-150496, 2016-Ohio-7510, ¶ 32. The trial court does not have to announce "a word-for-word recitation of findings," so long as this court can tell from the trial court's comments that it engaged in the requisite analysis. *State v. Schwarm*, 1st Dist. Hamilton No. C-160677, 2017-Ohio-7626, ¶ 17. If a trial court imposes consecutive prison terms without making the necessary findings, the sentence is clearly and

convincingly contrary to law, it must be vacated, and the cause remanded to the trial court for resentencing. *Bonnell* at ¶ 37.

{¶59} The trial court's judgment entry tracks the necessary statutory language for consecutive-sentencing findings. *See* R.C. 2929.14(C)(4) and 2929.14(C)(4)(c). At the sentencing hearing, the trial court orally announced that consecutive sentences were necessary to protect the public, given Patterson's criminal history. The trial court also noted that he had "no successful rehabilitation," Patterson was a "true danger" to society, and Patterson showed no remorse. The trial court stated, "You are willing to use a gun on another person, participate in that kind of situation. No regard for human life whatsoever." Although the trial court did not recite the statutory language in R.C. 2929.14(C)(4), it was not required to do so, and we can discern from the trial court's comments that it engaged in the necessary analysis. We hold that the trial court complied with *Bonnell* in making the necessary findings for consecutive sentences.

{¶60} Patterson also argues that the trial court failed to "truly" consider the purposes and principles of sentencing as set forth in R.C. 2929.11 and 2929.12 when imposing maximum sentences for the offenses. This court has held that R.C. 2929.11 and 2929.12 are not "fact finding" statutes, and that we may presume a trial court considered these factors absent an affirmative demonstration by a defendant to the contrary. *See State v. Hendrix*, 1st Dist. Hamilton Nos. C-150194 and C-150200, 2016-Ohio-2697, ¶ 51. Patterson has not made any affirmative demonstration.

{¶61} ***DNA-Testing Notification.*** Finally, Patterson argues that the trial court failed to notify him of the requirements in R.C. 2901.07(B)(1)(a) and (c) to submit to DNA testing. Although the trial court did not orally notify Patterson

regarding DNA testing, the trial court included DNA-testing notification in Patterson's sentencing entry. Moreover, this court has held that R.C. 2901.07(B) does not confer any substantive rights on a defendant, and therefore the court's failure to notify Patterson at his sentencing hearing regarding DNA testing was harmless and did not prejudice him. *See State v. Wright*, 2017-Ohio-1568, 90 N.E.3d 162, ¶ 60 (1st Dist.).

{¶62} We overrule Patterson's eighth assignment of error.

### Conclusion

{¶63} Having overruled Patterson's eight assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

ZAYAS, P.J., and MYERS, J., concur.

Please note:
The court has recorded its own entry on the date of the release of this opinion.