[Cite as *State v. Searles*, 2019-Ohio-3109.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-180339 |
| | | C-180340 |
| Plaintiff-Appellee, | : | TRIAL NO. 18CRB-12728 |
| vs. | : | *O P I N I O N.* |
| MICHAEL SEARLES, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 2, 2019

 *Paula Boggs Muething*, City Solicitor, *Natalia Harris*, City Prosecutor*,* and *Jon Vogt*, Assistant City Prosecutor, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *Krista Gieske,*  Assistant Public Defender*,* for Defendant-Appellant.

**BERGERON, Judge.**

{¶1}   Moving residences is never an enjoyable endeavor, but adding a bottle of Hennessy to the mix often causes more harm than good.  Here, three now-erstwhile friends gathered to assist with a move and, at the end of the day, one was convicted of assaulting another and trespassing in her apartment.  The defendant now appeals, raising sufficiency and manifest-weight grounds, but focuses his appeal on a challenge to the authenticity of photographs of the victim's injuries.  But his argument rests on an unduly restrictive theory of authentication that cannot be squared with Ohio law.  We accordingly hold that the trial court did not abuse its discretion in admitting the photographs, and in light of those pictures and the concomitant testimony, we reject the weight and sufficiency arguments as well and affirm the trial court's decision.

I.

{¶2}   When Lauren Lovette needed to move out of her apartment in May 2018, she solicited the help of her then-friend and neighbor, defendant-appellant Michael Searles.  Mr. Searles brought along a bottle of Hennessy for the occasion, which was readily opened.  Another friend, Ashley Burt, also joined to assist with packing.  The packing process eventually went awry, however, when Mr. Searles received a call from his sister, who needed a ride.  Mr. Searles told his sister he would go get her, but since he lacked a license himself, this posed a dilemma and meant that he needed a ride as well.  While not exactly clear whether Mr. Searles solicited a ride from Ms. Burt or whether she volunteered, either way Ms. Lovette protested because Ms. Burt had joined the group specifically to help with packing, and Ms. Lovette did not want to be deprived of any assistance in the exercise.

{¶3}   This refusal, however, upset Mr. Searles, who then became verbally abusive to Ms. Lovette, and she asked him to leave.  He demurred, and the situation escalated into a

physical altercation between Ms. Lovette and Mr. Searles, with both sides eventually summoning the police. Ms. Lovette testified that Mr. Searles punched her in the face and head repeatedly, as well as landing blows on her arms, body, and back. At some point, Ms. Lovette grabbed a pellet gun from the floor and attempted to defend herself, clubbing Mr. Searles across the face with it. Mr. Searles quickly disarmed her, however, and struck Ms. Lovette repeatedly in the back of the head with the pellet gun. Ms. Lovette testified that Mr. Searles next began pulling her hair, bit her, and brandished a pair of scissors at her. All the while, Ms. Lovette repeatedly insisted that he leave her apartment and he refused. The fight ultimately ended when Ms. Lovette left her own apartment in order to call the police and asked a neighbor outside to come to her aid. Mr. Searles was later arrested and charged with assault and criminal trespass.

{¶4} At trial, Ms. Lovette testified about the extent of her injuries, referencing the state's exhibits two through seven, which were pictures of her injuries the night of the fight taken by Ms. Burt. Ms. Lovette testified about her swollen face and various bruises apparent on her body after the fight. She also testified about a bald spot and bite mark scar permanently left from the fight.

{¶5} At trial, Mr. Searles told a completely different story—maintaining that he never hit Ms. Lovette. Instead, he insisted that he merely pushed her out of the way once and tried to swat the pellet gun away from her, severely injuring his hand in the process. He claimed that he only remained in the apartment, after being asked to leave, because he needed to find his insulin, which he required because he was diabetic.

{¶6} Ultimately, the trial court found Mr. Searles guilty of both the assault and criminal trespass. Mr. Searles now appeals, challenging two aspects of the proceeding below. First, he argues that the photographic evidence admitted depicting Ms. Lovette's

3

injuries was not properly authenticated, and second, he challenges both the sufficiency and manifest weight of the evidence underlying his convictions.

II.

{¶7}    In considering Mr. Searles's challenge to the authentication, we review such matters under an abuse-of-discretion standard. *See State v. Patterson,* 1st Dist. Hamilton No. C-170329, 2018-Ohio-3348, ¶ 14.  Evid.R. 901(A) states that "authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Evid.R. 901(A). "Authentication is 'a very low threshold, which is less demanding than the preponderance of the evidence.' " *Patterson* at ¶ 13, quoting *State v. White*, 4th Dist. Scioto No. 03CA2926, 2004-Ohio-6005, ¶ 61.  It merely requires foundational evidence or testimony which allows the trier of fact to determine that the evidence accurately depicts what the proponent claims it to represent. *State v. Crossty*, 2017-Ohio-8382, 99 N.E.3d 1048, ¶ 29 (1st Dist.).

{¶8}    Generally, photographic evidence may be authenticated by two means, either under the "pictorial testimony" theory or under the "silent witness" theory. *State v. Thyot*, 2018-Ohio-644, 105 N.E.3d 1260, ¶ 19 (1st Dist.).  Under the "pictorial testimony" theory, a sponsoring witness must establish that the evidence is an accurate representation of the subject matter based on the witness's personal observation, as the evidence is merely illustrative of the witness's testimony. *State v. Picken*s, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 102, ¶ 150 (differentiating between the theories and finding that the "silent witness" theory was applicable to the evidence at issue); *State v. Ollison,* 2016-Ohio-8269, 78 N.E.3d 254, ¶ 48 (10th Dist.) (witness's testimony sufficed to authenticate video). Conversely, the "silent witness" theory does not require an independent sponsoring witness because the evidence speaks for itself and is admissible when there is "a sufficient showing

of the reliability of the process or system that produced the photographic evidence." (Citations omitted.)  *Midland Steel Prods. Co. v. U.A.W. Local 488*, 61 Ohio St.3d 121, 130, 573 N.E.2d 98 (1991) (testimony sufficed to show that a surveillance system and the video it produced was reliable for purposes of authentication).

{¶9}   Here, the challenged photographs were admitted under the "pictorial testimony" theory through Ms. Lovette's testimony.  At trial, the prosecution specifically asked Ms. Lovette if the photographs constituted fair and accurate representations of her injuries that she sustained on the night of the fight, which she confirmed.  Furthermore, Ms. Lovette testified that Ms. Burt took the photographs with her phone the same night of the incident, and that Ms. Lovette had the opportunity to review the photographs before testifying.  In his appellate brief, Mr. Searles insists that this fell below the necessary threshold to authenticate the photographs because Ms. Lovette was not a proper sponsoring witness.  Instead, he claims that only Ms. Burt (who was apparently unavailable for trial) could lay an appropriate foundation to authenticate the pictures since they came from her phone.  But this puts too draconian a spin on authentication.  Authenticating evidence under the "pictorial testimony" theory does not require calling the witness who took the photograph, as long as a witness with knowledge can testify that the photographs reflect a fair and accurate representation of the subject matter.  *Ollison* at ¶ 48; *State v. Freeze,* 12th Dist. Butler No. CA2011-11-209, 2012-Ohio-5840, ¶ 66 ("[T]here is no need to call the witness who took the photographs as long as a witness with knowledge can testify that the photograph is a fair and accurate depiction.").  Consistent with this analysis, a victim's identification of photographs as accurately depicting the injuries satisfies the authentication requirements of Evid.R. 901. *See State v. Rowland*, 2d Dist. Montgomery No. Civ.A.20625, 2005-Ohio-3756, ¶ 14 (photographic evidence properly admitted when "the victim testified

5

that she asked a friend to take the photos of her and that the photos were a fair and accurate depiction of her injuries"). The same result obtains here—because Ms. Lovette testified that the photographs fairly and accurately portrayed her injuries on the night in question, the state satisfied its authentication burden, and the court did not abuse its discretion when it allowed the photographs into evidence.

{¶10} Mr. Searles next challenges the weight and sufficiency of the evidence underlying his convictions for both assault and criminal trespass. Appellate review of the sufficiency of the evidence is based upon whether viewing "the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crimes beyond a reasonable doubt." (Citations omitted.) *Crossty*, 2017-Ohio-8382, 99 N.E.3d 1048, at ¶15. Review of a weight-of-the-evidence challenge, however, requires examining the entire record, weighing all the evidence and reasonable inferences, and considering the credibility of the witnesses to determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way, resulting in a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

{¶11} With respect to the assault, R.C. 2903.13(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another or to another's unborn." Physical harm is defined as "any injury, illness, or physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). At trial, Ms. Lovette testified in detail about how Mr. Searles repeatedly hit her, bit her, and pulled her hair. She testified that this physical contact was "very painful" and that she experienced swelling and bruising on her body from the blows. She also explained that she now has a permanent bald spot where he pulled her hair out as well as a scar from the bite wound. Construing this evidence in the light most favorable to the state, such evidence sufficed, if believed, to sustain a finding of

guilt. *See State v. Thacker,* 4th Dist. Lawrence No. 04CA18, 2005-Ohio-1227, ¶ 3 (rejecting appellant's weight and sufficiency claims because the state introduced the testimony of the victim which established that the defendant caused physical harm by punching and kicking him). Therefore, sufficient evidence supported Mr. Searles's conviction for assault.

{¶12} Turning to his weight-of-the-evidence challenge, most of Mr. Searles's challenge actually revolves around his alleged self-defense claim. Part of the problem with this argument, however, is that Mr. Searles never properly raised this defense. *See State v. Kozlosky,* 195 Ohio App.3d 343, 2011-Ohio-4814, 959 N.E.2d 1097, ¶ 22 (8th Dist.) ("Self-defense is an affirmative defense that, if proved, relieves a defendant of criminal liability for the force that the defendant used."). Furthermore, asserting such a claim requires that the defendant show, by a preponderance of the evidence, that 1) he or she was not at fault in creating the violent situation, 2) that the defendant genuinely believed that he was under threat of imminent death or great bodily harm and force was the only means of escape, and 3) the defendant did not violate a duty to retreat to avoid the danger. *State v. Reid,* 1st Dist. Hamilton No. C-170697, 2019-Ohio-1542, ¶ 20; former R.C. 2901.05(A) (burden on defendant to prove self-defense). However, at trial Mr. Searles categorically denied hitting Ms. Lovette and maintained instead that he only swung at the pellet gun in an attempt to disarm her. He attributed injuries to his knuckles from having made contact with the pellet gun, and he essentially pretended that he never injured her. Such testimony stands at odds with self-defense, which is premised on the use of force, yet because of the circumstances the defendant is relieved of culpability. *State v. Kiehl,* 2016-Ohio-8543, 78 N.E.3d 1226, ¶ 31 (11th Dist.). "Self-defense presumes intentional, willful use of force to repel force or escape force." *Id.*, quoting *State v. Champion*, 109 Ohio St. 281, 142 N.E. 141 (1924), paragraph three of the syllabus.

{¶13} Moreover, Mr. Searles's alleged self-defense claim does nothing to actually refute the weight of the evidence supporting his conviction. Surveying the evidence presented at trial, the court had before it credible evidence, including testimony from Ms. Lovette, photographs of her injuries, and the testimony of Officer Christopher Kunz who investigated after the 911 calls. Tellingly, the trial judge went so far as to inform Mr. Searles that he found Mr. Searles's testimony incredible in light of the available evidence. To be sure, that evidence was conflicting, but the judge, as the trier of fact, was entitled to assign weight to each party's testimony based on his observations of their credibility. In sum, the record does not support a finding that the trial court lost its way in resolving these conflicts of evidence and produced a manifest miscarriage of justice.

{¶14} Mr. Searles's challenges to his criminal-trespass conviction fail for similar reasons. Criminal trespass requires that "[n]o person, without privilege to do so, shall do any of the following: * * * [k]nowingly enter or remain on the land or premises of another[.]" R.C. 2911.21(A). The entire incident that this case revolves around took place in Ms. Lovette's apartment, where she lived with her young daughter. At trial, Ms. Lovette testified to multiple occasions both before and during the fight in which she unambiguously told Mr. Searles to leave her apartment and he refused. This sufficed, if believed, to establish all the elements of criminal trespass. *See, e.g., Cleveland v. Dickerson,* 2016-Ohio-806, 60 N.E.3d 686, ¶ 18 (8th Dist.) (finding criminal trespass where the defendant refused to leave the airport after being asked to do so). Thus, sufficient evidence supported Mr. Searles's conviction for criminal trespass.

{¶15} Mr. Searles does not really seem to dispute any of this. Instead, he attempts to justify his continued presence in the apartment based on the fact that he was trying to find his belongings, including his wallet and insulin, before departing. He recycles that

argument on appeal, maintaining that he was privileged to remain on the premises in order to retrieve his property. In this vein, Mr. Searles relies on an overly-rosy reading of our decision in *State v. Lodgson*, 160 Ohio App.3d 517, 2005-Ohio-1875, 827 N.E.2d 869 (1st Dist.), to support reversal. In *Lodgson*, we invoked the Restatement of Torts to find that a protestor was entitled to enter another's land to retrieve his property which had been confiscated. *Id.* at ¶ 12 (discussing Restatement of the Law 2d, Torts, Section 198 (1965)). On the unique facts in that case, we emphasized two factors that bestowed the privilege to enter the land: 1) the defendant's property had been placed on the land without his consent, and 2) he was able to peaceably remove his property via quick entry onto and exit from the land. *Id.* at ¶ 18. The case at hand lacks both of these elements.

{¶16} Initially, we note that Mr. Searles voluntarily brought his property onto the premises. Thus, he bore responsibility for the whereabouts of his belongings; Ms. Lovette did not place them there over his protestations and without his consent. Additionally, as we have described above, nothing about this encounter could remotely be described as peaceable. The evidence indicates that both sides verbally abused each other and that Mr. Searles's decision to remain in the apartment searching for his belongings escalated the verbal disagreement into a physical altercation. Therefore, Mr. Searles enjoyed none of the privileges extended to the defendant in *Lodgson.* Ultimately, the court's admonishment in *Lodgson* remains true here: "In general, taking the law into one's own hands is not recommended—and is usually not legal * * *." *Id.* at ¶ 20. Absent any special privilege to remain in the apartment, and with no other apparent issue with the evidence, Mr. Searles's conviction for criminal trespass was not against the weight of the evidence.

{¶17} For the foregoing reasons, we find that Mr. Searles's two assignments of error lack merit, and they are accordingly overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

**MOCK, P. J.**, and **CROUSE, J.**, concur.

Please note:

The court has recorded its own entry this date.