[Cite as *State v. Rasheed*, 2023-Ohio-906.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220194 |
| | | TRIAL NO. C-21CRB-16273 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | |
| | | *O P I N I O N.* |
| THERON RASHEED, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 22, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Paula E. Adams* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Krista Gieske*, Assistant Public Defender, for Defendant-Appellant.

**Воск, Judge.**

**{¶1}** Defendant-appellant Theron Rasheed appeals his conviction for sexual imposition under R.C. 2907.06. We affirm the conviction.

## I.    Facts and Procedure

**{¶2}** Rasheed and G.G., the complaining witness in this case, worked together at Noodles & Company in Colerain. In August 2021, Rasheed, G.G., and four other employees were closing the restaurant. The complaint alleged that Rasheed walked past G.G. on multiple occasions and rubbed his pelvis against her buttocks.

**{¶3}** At a jury trial, G.G. testified that Rasheed walked past her "on multiple occasions using his crotch area, his penis to rub up against the back side of me" and that she "felt his genitals in his pants." She also testified that Rasheed's "hands grazed [her buttocks] at [sic] multiple occasions." G.G. reported the incident to the police three days later.

**{¶4}** The state played its "Exhibit A," which was a surveillance video from inside the restaurant on the evening of the incident. G.G. identified herself as the employee wearing a green shirt. Rasheed was wearing a gray shirt. The video showed Rasheed make contact with G.G. multiple times. G.G. testified that either his arm, leg, or "penis and his crotch area" touched her buttocks. She testified that there was enough room for him to pass without touching her. While G.G. testified that she assumed the first contact was an accident, the last encounter, where Rasheed "very forcefully" pressed his crotch area up against G.G.'s "entire back" was the "worst of the multiple interactions * * * he was very forceful and it was very violating." G.G. testified that, at this point, she was "very uncomfortable." G.G. asserted that Rasheed was taking photographs of her with his phone because it was facing her. She further stated

2

that Rasheed was walking around her area sweeping near her, but the area was still messy because there was sweeping left to do.

{¶5} G.G. resigned from Noodles & Company a week later because she felt unsafe working at the restaurant.

{¶6} The state sought to admit a second surveillance video from the restaurant that purported to depict Rasheed pressing the front of his body against the back of a woman's body two days later. G.G. was not in the second video or at the restaurant on the date the second video was recorded. Rasheed objected to its admission. The state argued that G.G. could authenticate the video using pictorial testimony. The trial court overruled Rasheed's objection to the video and allowed the jury to view it in its entirety, limiting G.G.'s testimony to the identification of Rasheed.

{¶7} G.G. identified Rasheed in the second video, but she could not testify to where the recording equipment was kept or identify any other employees in the second video.

{¶8} Colerain Police Officer Brent Wethington testified that the footage from the restaurant showed Rasheed "very clearly using [his phone] to take pictures and/or videos of the victims." He seized Rasheed's cell phone to search for photographs of G.G. but found none. Wethington testified that three days had passed since the incident and that law enforcement could "potential[ly]" extract deleted data.

{¶9} The jury found Rasheed guilty of sexual imposition under R.C. 2907.06. The trial court sentenced Rasheed to 60 days in jail, with a credit of ten days and 40 days suspended. The court imposed $110 in court costs, $500 in fines, placed Rasheed

3

on probation[1] for one year with counseling for sex offenses, and required him to register as a Tier I sex offender.

## II. Law and Analysis

### A. The second video was improperly admitted

{¶10} Rasheed's first and second assignments of error assert that the trial court improperly admitted the second video. First, he argues that the state failed to properly authenticate the video. Second, he argues that the second video contained improper propensity evidence and was inadmissible under Evid.R. 404(B).

{¶11} We review a challenge to authentication for an abuse of discretion. *State v. Searle*s, 1st Dist. Hamilton Nos. C-180339 and C-180340, 2019-Ohio-3109, ¶ 7. Evid.R. 901(A) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *State v. Thyot*, 2018-Ohio-644, 105 N.E.3d 1260, ¶ 18 (1st Dist.). Put another way, "[t]he authentication requirement is satisfied when the proponent presents foundational evidence or testimony from which a rational jury may determine that the evidence is what its proponent claims it to be." *Id.*, quoting *State v. Crossty*, 2017-Ohio-8382, 99 N.E.3d 1048, ¶ 29 (1st Dist.).

{¶12} Generally, photographic evidence may be authenticated by two means: the "pictorial testimony" theory or under the "silent witness" theory. *Thyot* at ¶ 19. Under the "pictorial testimony" theory, a sponsoring witness must establish that the

---

[1] The docket reflects that Rasheed was placed on community control for one year "pay thru probation," while the judge's sheet states that he was sentenced to probation. "Community control is the functional equivalent of probation * * *." *State v. Chapman*, 163 Ohio St. 3d 290, 2020-Ohio-6730, 170 N.E.3d 6, ¶ 8, fn. 1.

evidence is an accurate representation of the subject matter based on the witness's personal observation, as the evidence is merely illustrative of the witness's testimony. *Searles* at ¶ 8; *see State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 150 (differentiating between the theories and finding that the "silent witness" theory was applicable to the evidence at issue).

{¶**13**} Conversely, the "silent witness" theory does not require an independent sponsoring witness because the evidence speaks for itself and is admissible when there is "a sufficient showing of the reliability of the process or system that produced the photographic evidence." (Citations omitted.) *Midland Steel Prods. Co. v. U.A.W. Local 488*, 61 Ohio St.3d 121, 130, 573 N.E.2d 98 (1991) (testimony was sufficient to show that a surveillance system and the video it produced was reliable for purposes of authentication).

{¶**14**} In *Searles*, this court considered photographs that were admitted under the "pictorial testimony" theory through the victim's testimony. *Searles*, 1st Dist. Hamilton Nos. C-180339 and C-180340, 2019-Ohio-3109, at ¶ 9. At trial, the victim testified that the photographs were a fair and accurate representation of her injuries resulting from the fight in question. *Id.* The victim testified that she had reviewed the photographs and testified who took the photos of her injuries. *Id.* We held that the witness properly authenticated the photographs. Authenticating evidence under the "pictorial testimony" theory does not require calling the witness who took the photograph; instead, the pictorial-testimony theory requires a witness with knowledge who can testify that the photographs reflect a fair and accurate representation of the subject matter. *Id.*

5

{¶15} Here, the second video was offered as pictorial testimony. Therefore, the evidence should merely illustrate the witness's testimony. That was not the case here. G.G. was not present for the events that occurred during the video. While she could identify Rasheed and the restaurant in the video, she could not testify first-hand to what the video contained. The state failed to call anyone with first-hand knowledge. As such, the trial court abused its discretion by improperly admitting a video that was not merely illustrative of G.G.'s testimony.

{¶16} Moreover, the second video was not properly authenticated under the silent-witness theory. G.G. could not testify to the manner in which the recording system operated or was maintained. The state did not call anyone who could testify to the operations or procedures that the restaurant used to record and store footage.

{¶17} The trial court abused its discretion by admitting the second video because it was not properly authenticated.

### B. Admission of the second video was harmless error

{¶18} While we agree with Rasheed that the second video was not properly authenticated, its admission was harmless error.

{¶19} To determine whether improper admission of evidence affects a defendant's substantial rights, thus requiring a new trial, we first consider whether the improper admission of evidence may have prejudiced the defendant. *State v. Morris*, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, ¶ 27. Next, we look to whether the error was harmless beyond a reasonable doubt. *Id*. at ¶ 28. An error is not harmless if, under the facts and circumstances of the case, there is a reasonable probability that the improperly-admitted evidence contributed to the conviction. *Id*. To make that

determination, the court must excise the improper evidence from the record and consider the remaining evidence. *Id.* at ¶ 29.

**{¶20}** An error is harmless if after "this evidence is removed, the outcome of the trial would be the same because the remaining evidence is overwhelming." *State v. English*, 1st Dist. Hamilton No. C-180697, 2020-Ohio-4682, ¶ 68; *see State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, 984 N.E.2d 1057, ¶ 43.

**{¶21}** We find that the remaining evidence overwhelmingly supported Rasheed's guilt and the second video was not necessary to support his conviction.

**{¶22}** Rasheed was convicted of sexual imposition under R.C. 2907.06, which prohibits a person from having sexual contact with another, who is not the spouse of the offender, when the offender knows that the sexual conduct is offensive to the other person.

**{¶23}** The first video, along with G.G.'s testimony, showed that Rasheed purposely made sexual contact with G.G. on multiple occasions. The video depicts that, despite having room to maneuver through the restaurant and avoiding contact with other employees, Rasheed forcefully pressed his groin against her buttocks. G.G. testified that she was offended by the contact and that it made her uncomfortable.

**{¶24}** Viewing the video in conjunction with G.G.'s uncontroverted testimony, we find overwhelming evidence that supported Rasheed's conviction—he would have been convicted without the improperly-admitted evidence. Therefore, any error in admitting the second video was harmless and no new trial is required. We overrule Rasheed's first assignment of error.

**{¶25}** Rasheed also assigns as error the admission of the second video under Evid.R. 404(B), asserting that it contained improper propensity evidence. Rasheed's

argument involving harmless error referred this court to his harmless-error argument under his first assignment of error. Because we have determined that any error in the admission of the second video was harmless, we overrule Rasheed's second assignment of error.

### C. The evidence was sufficient to support the conviction and the conviction was not contrary to the weight of the evidence

{¶26} Rasheed's third assignment of error argues that the record is not sufficient to show that his actions were purposeful and motivated by sexual gratification or arousal and that his conviction is contrary to the weight of the evidence.

<u>The evidence was sufficient to support the conviction.</u>

{¶27} The test for determining the sufficiency of the evidence is whether "after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). It presents a question of law for this court's review and this court should not weigh the evidence unless, after viewing the evidence, it weighs heavily against conviction. *MacDonald* at ¶ 12.

{¶28} Rasheed contends that he did not violate any company or employee policy by helping his coworkers where he is designated to work in the kitchen. He asserts that any contact made with G.G. was incidental due to the small spaces in the restaurant. He points out that none of the other employees who were present that

8

evening corroborated her version of the events. Rasheed denies any allegation that he was photographing or videotaping her, contending that the record reflects that he did not take pictures of G.G.

**{¶29}** The evidence was sufficient to show that Rasheed made unwanted sexual contact with G.G. on multiple occasions. The video shows Rasheed pressing his pelvic area against G.G.'s backside three different times. His thin stature, when compared to the space where G.G. was standing as he passed her, shows that he had ample room to avoid touching her. Or he could have maneuvered through the restaurant via a different path. Further, Rasheed avoided contact with the other four people working in the area, including one woman who was similar in size to G.G.

**{¶30}** Although it appeared from the video that Rasheed took photos of G.G., whether he did so was irrelevant. The evidence was sufficient to show that Rasheed intended to rub himself against G.G.'s buttocks.

<u>The conviction was not contrary to the weight of the evidence.</u>

**{¶31}** In reviewing a weight-of-the-evidence claim, this court must review "the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 59, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). "When evidence is susceptible to more than one construction, a reviewing court must give it the interpretation that is consistent with the judgment." *In re J.C.,* 1st Dist. Hamilton No. C-180493, 2019-Ohio-4027, ¶ 20.

{¶32} The weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. *Bailey* at ¶ 63. In reviewing a challenge to the weight of the evidence, this court sits as a "thirteenth juror." *State v. Curry*, 1st Dist. Hamilton No. C-190107, 2020 Ohio App. LEXIS 1184, ¶ 17 (Mar. 31, 2020), quoting *Thompkins* at 387. But this court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *Bailey* at ¶ 63.

{¶33} Reversing a conviction and granting a new trial should only be done in "exceptional cases in which the evidence weighs heavily against the conviction." *Id.* "The trier of fact is in the best position to judge the credibility of the witnesses and the weight to be given to the evidence presented." *State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16.

{¶34} This was not one of those exceptional cases. The evidence weighed in favor of Rasheed's conviction. The trial court did not lose its way or create a miscarriage of justice. Rasheed's third assignment of error is overruled.

### III.   Conclusion

{¶35} While the trial court abused its discretion by admitting improperly-authenticated evidence, the error was harmless because Rasheed's conviction was overwhelmingly supported by the remaining evidence. We affirm the trial court's judgment.

Judgment affirmed.

CROUSE, P.J., concurs.

WINKLER, J. concurs in judgment only.

Please note:

The court has recorded its entry on the date of the release of this opinion.